IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

EVELYN CABELL,

          Plaintiff,

v.                                       CIVIL ACTION NO.  2:20-cv-00507

CMH HOMES, INC., et al.,

          Defendants.

MEMORANDUM OPINION AND ORDER

Pending before the court are motions for summary judgment filed by Defendants CMH Homes, Inc. and CMH Manufacturing, Inc. (collectively, the "CMH Defendants") [ECF No. 95] and Defendant Southern Ohio Construction, LLC [ECF No. 97]. The motions are fully briefed and ripe for consideration. For the reasons discussed below, the Motions for Summary Judgment are **GRANTED** as they pertain to Plaintiffs' claims.[1]

I.    Relevant Facts

This case presents a series of contract disputes among the parties. Plaintiff Evelyn Cabell gave her son, Plaintiff Billy Cabell, power of attorney to purchase a

---

[1] Defendant Southern Ohio also moves for summary judgment in its favor on CMH Homes cross-claim for indemnity. In addition to CMH Homes' cross-claim, CMH Manufacturing also cross-claims against Southern Ohio, and Southern Ohio cross claims against CMH Homes and CMH Manufacturing. However, each cross-claim is dependent on Plaintiffs recovering from one or more Defendants. Because all of Plaintiffs' claims fail, all of the cross-claims are **DISMISSED**. Likewise, each Defendant filed a counterclaim against Plaintiff Billy Cabell. Those counterclaims were also dependent upon Plaintiffs recovering and are therefore **DISMISSED**.

modular home in her name from Defendant CMH Homes. Billy Cabell went to CMH Homes, worked with sales representatives, chose a home, and negotiated and signed a Sales Agreement on behalf of Ms. Cabell. The modular home was to be manufactured in two pieces by CMH Manufacturing and then transported to Ms. Cabell's land by CMH Homes. According to Plaintiffs, Billy Cabell was going to live in the home, which would be located next to his parents, at least in part so that he could help care for them.

In the normal course, CMH Manufacturing would manufacture the pieces of the modular home and those pieces would be transported to the CMH Homes location. CMH Homes would then engage a contractor to build a foundation for the home, transport the pieces to the home site and complete construction by installing the home on the foundation. In this case, however, Billy Cabell negotiated a lower sales price by agreeing to hire his own contractor to build the foundation and install the home.[2] Despite Plaintiffs' contention otherwise, the record provides no support for an alternate version of the facts.

When CMH sales representatives emailed Billy Cabell a quote, the sales price included "Foundation and Setup." [ECF No. 95-3, at 1]. Immediately below the sales price, the quote included a list of items that were to be deducted from the sales price. That list included items such as the countertops and carpets *and* the foundation and "Setup of Home (We Deliver Only)." *Id.* The list reflected the amount of money

---

[2] Throughout the briefing, Plaintiffs dispute this fact. While I am mindful that I must take all facts and inferences in the light most favorable to the non-moving party—here, Plaintiffs—the record makes clear that Billy Cabell did, in fact, take on this responsibility. Therefore, I need not accept Plaintiffs' contrary allegation.

Plaintiffs would save from each deduction and listed the total price for the home after the modifications. *Id.* Even more important, the contracts signed by Billy Cabell make it indisputable that Billy Cabell contracted to take on responsibility for the foundation and installation of the home.

The Sales Agreement [ECF No. 95-4] sets out lists of "Seller Responsibilities" and "Buyer Responsibilities." Among the seller responsibilities were "Delivery of Home to the House Seat, Construction of Home As Per Agreed Upon Options, Drywall Repair and Trimout Of Home Once Set, . . . [and] AC Installed." [ECF No. 95-4, at 1]. The Buyer Responsibilities were as follows:

> *All Setup of Home*, *Foundation Installation*, Lot Prep, Drainage, Utility Hookups, Garage, Steps, Decks, Gutters, Downspouts, *Anything Having To Do With Construction Of The Home Once On Property*.

*Id.* (emphases supplied).

In addition to the Sales Agreement, Billy Cabell executed a West Virginia Schedule and Agreement Regarding Installation Responsibilities. [ECF No. 95-5]. That document required Billy Cabell to "acknowledge You have been notified and understand that improper installation of Your manufactured home may result in . . . severe damage to the structure [and] the creation of safety or health hazards in the home or at the home site." *Id.* at 1. It further explained that "You have the right to personally install or independently hire a licensed installer for the installation of Your manufactured home. You understand You are legally responsible for work You contract to do relative to the installation of Your home as agreed below." *Id.* On the second and third pages of the document, a chart listing the various installation

3

responsibilities designated those responsibilities as either "We"—CMH Homes—or "You"—Billy Cabell. Billy Cabell was responsible for the following items: conducting a soil evaluation, clearing and providing access to the site, rough grading the site, digging footings, pouring concrete, positioning and leveling the home on its support system, anchoring the home, close-in, making all utility connections, and final grading and water control. *Id.* CMH Homes was responsible for delivering the home to the home site, conducting a physical inspection of the site, designing footings, trim and adjustment, non-electrical cross-over connects, and installing and venting the facia. *Id.*

Billy Cabell hired Southern Ohio Construction, LLC, to complete installation of the home at the home site. Though Plaintiffs argue otherwise, there is once again no evidence in the record that Southern Ohio was hired by CMH Homes. Rather, as the record makes clear, Billy Cabell agreed to hire his own installer. The record does show that Billy Cabell learned about Southern Ohio through CMH Homes, however. During his discussions with a CMH Homes sales representative prior to signing the Sales Agreement, Billy Cabell asked the representative what contractor CMH Homes would use to install the home if they were the ones responsible for doing so. The representative told Billy Cabell that CMH Homes has a list of approved contractors it hires from on a rotating basis; the next one up on the list was Southern Ohio. Plaintiffs acknowledge in their response brief that "Billy Cabell was further told that if he dealt with Southern directly, he may be able to save some money. *He did so* and

requested that Southern also build a foundation for him since they were going to be installing his home." [ECF No. 104, at 2 (emphasis supplied)].

CMH delivered the home and Southern Ohio began installation. Once Billy Cabell was permitted to inspect the home, he claims he found numerous defects in the construction and installation of the home. Though the Amended Complaint lacks any specificity about these alleged defects, Plaintiffs filed suit against the CMH Defendants, Southern Ohio, and John Doe[3] alleging four causes of action. Count One alleges a breach of contract claim against CMH Homes; Count Two alleges negligent construction against the CMH Defendants and Southern Ohio; Count Three alleges Negligent Hiring or Negligent Recommendation against the CMH Defendants; and Count Four is a third-party beneficiary claim against Southern Ohio. Defendants now move for summary judgment on all claims.[4]

## II. Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure governs motions for summary judgment. A court "may grant summary judgment only if, taking the facts in the best light for the nonmoving party, no material facts are disputed and the moving party is entitled to judgment as a matter of law." *Ausherman v. Bank of Am. Corp.*, 352

---

[3] Though the Amended Complaint names John Doe, "an unknown person or entity who may be liable for the damages sustained by the Plaintiff," the Amended Complaint does not actually make any specific claim against John Doe. [ECF No. 27, at 2]. Further, John Doe has never been served and the record does not reveal any other unnamed person or entity.

[4] In addition to moving for summary judgment on the merits of each claim, Defendants move for summary judgment that Billy Cabell does not have standing to obtain damages under West Virginia law, and on Plaintiffs' request for attorneys' fees. Because there is no dispute that Evelyn Cabell has standing, this court can engage in the merits arguments. And because I ultimately grant summary judgment on the merits of each claim, I need not decide the standing or attorneys' fees issues.

F.3d 896, 899 (4th Cir. 2003). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." *News & Observer Publ. Co. v. Raleigh–Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010).

The moving party may meet its burden of showing that no genuine issue of fact exists by use of "depositions, answers to interrogatories, answers to requests for admission, and various documents submitted under request for production." *Barwick v. Celotex Corp.*, 736 F.2d 946, 958 (4th Cir. 1984). "[A] party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby*, 477 U.S. 242, 256 (1986). Although the court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor." *Id.* The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of her position. *Id.* at 252. Likewise, conclusory allegations or unsupported speculation, without more, are insufficient to preclude the granting of a summary judgment motion. *See Felty v. Graves–Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987).

Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of her case and does not make, after adequate time

for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

### III. Discussion

#### A. Count One – Breach of Contract

Plaintiffs' Amended Complaint alleges breach of contract against Defendant CMH Homes. According to the Amended Complaint, "Plaintiffs and Defendant CMH Homes entered into a contract whereby Defendant CMH Homes would sell to Plaintiffs and construct the Modular Home on the Property in a reasonably prudent manner . . . Defendant CMH Homes breached said contract by failing to *construct the Modular Home on the Property*." [ECF No. 27, at ¶ 18 (emphasis supplied)]. CMH Homes moves for summary judgment because the contract at issue, the Sales Agreement, plainly makes "Anything Having to Do With Construction Of The Home Once On Property" Plaintiffs' responsibility. [ECF No. 96, at 4–8; ECF No. 95-4]. Plaintiffs respond that CMH is "attempt[ing] to play semantics," and that "the mere phrase 'home on the property' was describing the location of the home" and not the location where the breach occurred. [ECF No. 104, at 3]. Plaintiffs also contend that the contract is ambiguous as to who was responsible for installation of the home, and they claim—for the first time—that CMH breached the contract by breaching an implied warranty of merchantability.

#### 1. Scope of the Claim

As an initial matter, I must determine whether Plaintiffs' claim is as narrow as CMH Homes suggests. I find that it is. Plaintiffs' contention that "failing to

7

construct the Modular Home on the Property" [ECF No. 27, at ¶ 19] was meant to only refer to the location of the home rather than the location of the breach is disingenuous and in any event would not resolve the issue. Though Plaintiffs now say the breach of contract claim has always related to both manufacturing defects and defects in the installation or construction of the home on the property, there is no evidence that this is the case.

Plaintiffs are the masters of their own complaint. They were represented by counsel in drafting the Complaint and Amended Complaint, and counsel is clearly aware that the terms "manufacture" and "construct" have distinct meanings— especially given the facts of this case. Even Plaintiffs' Amended Complaint recognizes that "Plaintiffs contracted . . . to purchase a modular home *manufactured* by Defendant CMH Manufacturing to be *constructed* on the Property," [ECF No. 27, at ¶ 11], and that Southern Ohio was hired "to *construct the Modular Home on the Property*," *id.* at ¶ 14. This same distinction is made throughout the briefing in this case. But the Amended Complaint makes no mention of *manufacturing* defects. Instead, it claims, without specificity, that the home was "constructed poorly," *id.* at ¶ 15, and CMH Homes breached the contract "by failing to construct the Modular Home on the Property in a reasonably prudent manner," *id.* at ¶ 19. I find that Plaintiffs' breach of contract claim relates only to construction of the home on the property. The next question, then, is whether the contract at issue makes clear who was responsible for that construction.

## 2. Ambiguity in the Contract

"A valid written instrument which expresses the intent of the parties in plain and unambiguous language is not subject to judicial construction or interpretation but will be applied and enforced according to such intent." Syl. Pt. 1, *Cotiga Dev. Co. v. United Fuel Gas Co.*, 128 S.E.2d 626 (W. Va. 1962). "The mere fact that parties do not agree to the construction of a contract does not render it ambiguous. The question as to whether a contract is ambiguous is a question of law to be determined by the court." Syl. Pt. 1, *Berkeley Cty. Pub. Serv. Dist. v. Vitro Corp.*, 162 S.E.2d 189 (W. Va. 1968). "Contract language is considered ambiguous where an agreement's terms are inconsistent on their face or where the phraseology can support reasonable differences of opinion as to the meaning of words employed and obligations undertaken." Syl. Pt. 6, *State ex rel. Frazier & Oxley, L.C. v. Cummings*, 569 S.E.2d 796 (W. Va. 2002). "And where the written contract is ambiguous and uncertain, parol evidence is admissible to show the situation of the parties, the surrounding circumstances at the time of the writing, and the practical construction given by the parties." *Stewart v. Blackwood Elec. Steel Corp.*, 130 S.E. 447, 449 (W. Va. 1925). "Even then, if the parol evidence be not in conflict, the duty remains with the court to construe the writing; otherwise, it becomes a jury question under proper instructions." *Id.*

Here, Plaintiffs argue the Sales Agreement is ambiguous as to whether CMH was responsible for the installation of the home, which is part of the "construction of the home on the property." In support, Plaintiffs point to two allegedly conflicting

9

provisions within the Sales Agreement.[5] First, Plaintiffs recognize that the front page of the Sales Agreement, which specifies the specific options made by the parties, states that "All Setup of Home, Foundation Installation," and "Anything Having To Do With Construction Of The Home Once On Property" is Plaintiffs' responsibility. However, Plaintiffs note that the back of the Sales Agreement, which includes "Additional Terms and Conditions," states that "Normal delivery and installation are included in the purchase price." [ECF No. 95-4, at 2].

CMH Homes argues that the back side of the Sales Agreement is a form document that includes the standard terms and conditions that apply in a normal sale. CMH Homes points to additional term and condition number one, which states that "[t]he terms and conditions stated herein are in addition to any provisions of the sale . . . stated on the front of the agreement." [ECF No. 95-4, at 2]. According to CMH Homes, this provision means that "the provisions set forth on the front of the Sales Agreement are controlling, and that the parties can use the front page to alter the form provisions." [ECF No. 106, at 5].

I find that the Sales Agreement is ambiguous. Contrary to CMH Homes' assertion, I do not find that additional term number one provides that the front of the document is "controlling." Rather, it provides that the terms and conditions on the back of the document are "in addition to," as in, taken together with, the terms stated on the front of the agreement. Here, the front of the agreement provides that

---

[5] Plaintiffs also point to supposed actions by CMH Homes with regard to the set-up and installation of the home that, according to Plaintiffs, conflict with the duties assigned in the Sales Agreement. These arguments are irrelevant to the determination of whether the Sales Agreement itself is ambiguous, and I need not consider them here.

10

Plaintiffs are responsible for "All Setup of Home, Foundation Installation," and "Anything Having To Do With Construction Of The Home Once On Property," but additional term number two states that "Normal delivery and installation are included" in the sales price. These terms used here can support a reasonable difference of opinion as to the obligations undertaken by the parties because "installation," "All Setup," and "Construction . . . On the Property" all relate to the process of placing the home on the foundation and putting the pieces together to create the home. Because the contract is ambiguous, parol evidence, that is evidence prior to and contemporaneous with the signing of the Sales Agreement, is admissible to determine the intent of the parties.

The parol evidence in the record before me includes the email quotation and subsequent conversation between Billy Cabell and CMH Homes [ECF No. 95-3], and the West Virginia Schedule and Agreement Regarding Installation Responsibilities [ECF No. 95-5]. These documents do not conflict with the Sales Agreement. Rather they serve to clarify the terms in the Sales Agreement. Therefore, interpretation of the contract terms is still a matter of law rather than a question for the jury.

Here, the email conversations prior to the execution of the Sales Agreement clarify that the purchase price does typically include foundation and setup. However, the emails make clear that the purchase price in this case was lowered to reflect certain changes to the standard agreement. Specifically, as relevant here, Billy Cabell negotiated a purchase price that was "Minus Foundation" and "Minus Setup of Home (We Deliver Only)." [ECF No. 95-3, at 1]. Billy Cabell responded to the quote by

11

pointing out a mathematical error and then signed a sales worksheet reflecting the total price without the foundation and setup. *Id.* at 3. Similarly, the West Virginia Schedule and Agreement Regarding Installation Responsibilities [ECF No. 95-5] clarifies which parts of the installation were assigned to each party. That document makes clear that Plaintiffs were responsible for the foundation and for "Positioning and leveling the home on its support system," "Anchoring the home," and "Close-in" of the home. These documents, taken together, make clear that the intent of the parties was expressed on the front of the Sales Agreement. Plaintiffs were to be responsible for "installation," "All Setup," and "Construction . . . Once On Property" because Billy Cabell negotiated a lower purchase price in exchange for taking on those responsibilities.

### 3. Conclusion

Because Plaintiffs were responsible for "Anything Having to Do With Construction . . . Once On Property," CMH Homes could not have breached the contract "by failing to construct the Modular Home on the Property in a reasonably prudent manner." CMH Homes' Motion for Summary Judgment on Count One is **GRANTED**.

### B. Count Two – Negligent Construction

Plaintiffs' second count alleges Negligent Construction against Defendants CMH Homes, CMH Manufacturing, and Southern Ohio. Defendants move for summary judgment because West Virginia law makes clear that tort liability "will not arise for breach of contract unless the action in tort would arise independent of

the existence of the contract." *Beattie v. Skyline Corp.*, 906 F. Supp. 2d 528, 542 (S.D. W. Va. 2012). That is, a Plaintiff must plead breach of contract, rather than negligence, when the source of the duty allegedly breached is a contract. The Supreme Court of Appeals of West Virginia has explained

In seeking to prevent the recasting of a contract claim as a tort claim, [it applies] the 'gist of the action' doctrine. Under this doctrine, recovery in tort will be barred when any of the following factors is demonstrated:

> (1) where liability arises solely from the contractual relationship between the parties;
> (2) when the alleged duties breached were grounded in the contract itself;
> (3) where any liability stems from the contract; and
> (4) when the tort claim essentially duplicates the breach of contract claim or where the success of the tort claim is dependent on the success of the breach of contract claim.

*Gaddy Eng' Co. v. Bowles Rice McDavid Graff & Love, LLP*, 746 S.E.2d 568, 577 (W. Va. 2013) (citations omitted). And, of course, where an action in tort is proper, the standard elements of duty, breach, causation, and damages apply.

In the Amended Complaint, Plaintiffs allege that Defendants breached their "dut[ies] to properly design, construct, supervise, inspect and otherwise assemble the Modular Home on the Property in a reasonably prudent manner as would any other reasonably prudent modular home manufacturers, sellers, assemblers and contractors." [ECF No. 27, at ¶22]. Defendants move for summary judgment. The CMH Defendants argue first, as I have already found, that Billy Cabell contracted to take on many of these responsibilities himself and so CMH owed him no duty in the first instance. To the extent any alleged duty did remain with the CMH Defendants,

they argue the source of the duty is the Sales Agreement, so a negligence claim is improper. Southern Ohio argues that a negligence claim against it is likewise improper because Plaintiffs do not allege a duty that arises apart from the contract between Southern Ohio and Billy Cabell. In response, Plaintiffs acknowledge the relevant West Virginia law but then baldly claim the "CMH Defendants [sic] conduct and representations in this case have given rise to Plaintiffs' tort actions, and these claims are independent from the actual terms of the contract" [ECF No. 104, at 16], and that "it is the deceptive and negligent actions of Defendant Southern that give rise to the Plaintiffs' negligence cause of action" [ECF No. 103, at 14].

Plaintiffs do not dispute the existence of a contract with any Defendant, and they make no attempt to explain how the alleged negligence of any Defendant arises from a duty that is independent of a contract. Because "a party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts," Plaintiffs have failed to overcome Defendants' showing that they are entitled to summary judgment. Defendants Motions for Summary Judgment on Count Two are **GRANTED**.

### C. Count Three – Negligent Hiring/Referral

Count Three of the Amended Complaint alleges the CMH Defendants negligently hired or negligently referred Southern Ohio. The CMH Defendants move for summary judgment in their favor. CMH Manufacturing argues that there is no evidence in the record that it hired, referred, or was involved in any way with Southern Ohio. CMH Homes argues it is entitled to summary judgment on the

negligent hiring claim because CMH Homes did not hire Southern Ohio and the terms of the West Virginia Schedule and Agreement Regarding Installation Responsibilities unambiguously place all responsibility for installation, including selecting and supervising an installer, with Plaintiffs. CMH Homes argues it is entitled to summary judgment on the negligent referral claim because West Virginia does not recognize such a claim; CMH Homes did not refer Southern Ohio; and, even if it did hire or refer Southern Ohio, there is no evidence it was negligent in doing so.

Plaintiffs make no response to CMH Manufacturing's arguments. In response to CMH Homes, Plaintiffs first argue that CMH Homes did hire Southern Ohio. In support, Plaintiffs point only to Billy Cabell's deposition where he claims he did not choose Southern Ohio but that Josh Dials, a salesman at CMH Homes, told him Southern was next in line. [ECF No. 104, at 17–18]. According to Plaintiffs, if CMH Homes had its own list of approved installers it hires from, "Plaintiffs could not have hired their own contractor," *id.* at 19, even though, as I have already found, they took on that responsibility. Plaintiffs make no response to CMH Homes' argument that West Virginia does not recognize a negligent referral claim or its argument that, even if it did hire or refer Southern Ohio, there is no evidence it was negligent in doing so.

First, I find that West Virginia does not, and would not, recognize a claim for negligent referral or recommendation of a contractor. *Pied Piper, Inc. v. Datanational Corp.*, 901 F. Supp. 212, 214 (S.D. W. Va. 1995). The court is not aware of, and Plaintiffs do not point to, any change in West Virginia law on this issue. As for the negligent hiring claim, "[t]o state a claim for negligent hiring, retention, or

15

supervision, a plaintiff must allege facts, which, if true, would show that the employer was negligent in selecting and retaining the employee and that such negligence proximately caused harm to the plaintiff." *Sullivan v. City of Smithers*, No. 2:08-cv-0337, 2008 WL 11429359, at *7 (S.D. W. Va. Nov. 17, 2008) (citing *Thomas v. McGinnis*, 465 S.E.2d 922, 929 (W. Va. 1995)). A principal has no "affirmative duty to conduct a comprehensive inquiry into the credentials of an individual hired as an independent contractor. Where the independent contractor selected is a licensed, reputable individual or firm . . . the [principal] is not obligated to engage in a personal inquiry into the credentials or training of the contractor." *Thomas*, 465 S.E.2d at 929. "However, where the exercise of reasonable diligence would disclose facts demonstrating that the contractor was clearly incompetent for the particular task contemplated, a reasonably prudent [principal] should not retain the contractor." *Id.*

Here, there is no evidence in the record that Southern Ohio was incompetent for the particular task contemplated. CMH included evidence in the record that Southern Ohio is a contractor licensed to do work in West Virginia [ECF No. 95-12] and that Southern Ohio's owner is licensed as a mobile home installer [ECF No. 95-13]. Plaintiffs do not dispute that Southern Ohio is licensed. Rather, Plaintiffs' only attempt to argue incompetence is their claim that "in just Southern West Virginia alone, there have been several suits filed against both Southern and CMH for homes with defects that were manufactured by CMH and installed by Southern." [ECF No. 104, at 17]. In support, Plaintiffs do not point to any evidence or facts from these alleged cases; they do not provide case names, case numbers, or any other

16

information. Instead, Plaintiffs cite only to Billy Cabell's deposition at pages 141 to 143. While a portion of Billy Cabell's deposition is attached to the response [ECF No. 103-1], pages 141 to 143 are not included. In fact, the "transcript" includes only pages 21, 23, 57, 60, 62, 63, 64, 144, 150 to 156, and 166. Therefore, Plaintiffs utterly fail to overcome CMH Homes' showing that there is no genuine dispute of material fact and that it is entitled to judgment as a matter of law. The CMH Defendants' Motion for Summary Judgment on Count Three is **GRANTED**.

### D. Count Four – Third-Party Beneficiary

Finally, Count Four of the Amended Complaint alleges a third-party beneficiary claim against Southern Ohio. Plaintiffs allege that CMH Homes or CMH Manufacturing entered into a contract with Southern Ohio to construct the home on the property, Southern breached the contract, and damaged Plaintiffs as third-party beneficiaries to the contract. [ECF No. 27, at ¶¶ 29–34]. Southern Ohio moves for summary judgment because it was not hired or paid by the CMH Defendants to do work on Plaintiffs' home. [ECF No. 98, at 10]. Though Southern Ohio and CMH Homes have an agreement whereby Southern Ohio is an independent contractor for CMH Homes, that agreement was not implicated in this case because Billy Cabell contracted directly with Southern Ohio. Even if the agreement was applicable here, Southern Ohio argues it was not created for Plaintiffs' sole benefit and therefore cannot be the basis of a third-party liability claim. [ECF No. 98, at 11]. Plaintiffs' Response [ECF No. 103] to Southern Ohio's motion for summary judgment neglects to make any argument in opposition.

I have already held that Plaintiffs agreed to take responsibility for hiring their own contractor to install the modular home. And there is no evidence in the record that CMH Homes contracted with or paid Southern Ohio for its work on Plaintiffs' home. As noted above, Plaintiffs acknowledge in their briefing in this case that "Billy Cabell was further told that if he dealt with Southern directly, he may be able to save some money. *He did so* and requested that Southern also build a foundation for him since they were going to be installing his home." [ECF No. 104, at 2 (emphasis supplied)]. Therefore, Southern Ohio is entitled to summary judgment on that basis.

Even if Southern Ohio was acting in its capacity as an independent contractor for CMH Homes, West Virginia law makes clear that a contract only gives rise to third-party liability if the contract was made for the third party's "sole benefit." *See* W. Va. Code § 55-8-12; *United Dispatch v. E. J. Albrecht Co.*, 62 S.E.2d 289, 296 (W. Va. 1950). Here, the independent contractor agreement between Southern Ohio and CMH Homes was executed on May 19, 2010, nearly a decade before Plaintiffs purchased the modular home. Therefore, the independent contractor agreement could not have been for Plaintiffs sole benefit and cannot give rise to a third-party beneficiary claim. Southern Ohio's Motion for Summary Judgment on Count Four is **GRANTED**.

### IV. Conclusion

For the foregoing reasons, Defendants' Motions for Summary Judgment [ECF Nos. 95, 97] are **GRANTED** as they pertain to Plaintiffs' claims. All of the cross-claims and counterclaims are **DISMISSED**. Because Plaintiffs have withdrawn the relevant

document [ECF No. 110], Defendants' Second Joint Motion to Exclude Untimely Expert Disclosures [ECF No. 107] is **DENIED AS MOOT**.[6] All pending motions in limine [ECF Nos. 116, 118, 119, 120, 121, 122, 123, 124, 125, 126, 127, 128, 137] and the pending motions related to jury information [ECF Nos. 144, 145] are **DENIED AS MOOT**. Because the court is still considering Defendants' Joint Motion for Sanctions [ECF No. 129] this case will remain open and on the court's active docket. The final settlement conference and trial are **CANCELLED**.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: November 18, 2021

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE

---

[6] Of course, the court did not consider the document.